UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FANNIE MAE WILLIAMS by her guardian
United Guardianship Services; MINDY BACKER
by her guardian Gay Lee Freedman; and ANNIE L.
KELLY by her guardian United Guardianship
Services, on behalf of themselves and all others
similarly situated,

                Plaintiffs,

    - against -

NIRAV R. SHAH, M.D., M.P.H., in his capacity as
the Commissioner of the New York State
Department of Health,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
12-CV-3953 (RRM) (RML)

ROSLYNN R. MAUSKOPF, United States District Judge.

      This is a putative class action arising from an alleged policy of the New York State Department of Health that does not allow for the deduction of certain expenses from the payment obligations of Medicaid recipients entitled to nursing home care. (*See* Am. Compl. (Doc. No. 16).) In particular, plaintiffs, incapacitated persons under New York law for whom guardians were appointed by state court order, challenge the Department of Health's decision not to deduct from their required Medicaid contribution the expenses that plaintiffs may be required to pay to their guardians. (*Id.*) Plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, claiming that this policy violates the Medicaid Act, 42 U.S.C. §§ 1396 *et seq.*. Before the Court is defendant's fully-briefed motion to dismiss. (Doc. No. 17.) Oral argument on the motion was held on March 27, 2014. For the reasons that follow, defendant's motion to dismiss is granted.

# BACKGROUND[1]

The crux of this case is an alleged conflict between plaintiffs' financial obligations to their guardians and plaintiffs' financial obligations under Medicaid. Plaintiffs reside in nursing homes and their Medicaid benefits are administered by the New York City Human Resources Administration ("HRA").[2] Each plaintiff is eligible to receive Medicaid benefits. Each plaintiff was also found, pursuant to Article 81 of the New York Mental Hygiene Law, to be an "incapacitated person" and was appointed a guardian to oversee the management of her property and personal needs. *See* N.Y. Mental Hyg. Law §§ 81.02, 81.03 (McKinney's 2014).

Plaintiffs are required to pay for the benefits they are eligible to receive under Medicaid, and, under some circumstances, can be required to pay for expenses related to their court-appointed guardians as well. "Medicaid recipients who are admitted to nursing homes and who have income exceeding a specified level must pay for a portion of their care." *Florence Nightingale Nursing Home v. Perales*, 782 F.2d 26, 27 (2d Cir. 1986); *see also* 42 U.S.C. § 1396a(q)(1)(A). The administering agency must deduct certain sums from the individual's income when determining that contribution, *see* 42 C.F.R. § 435.832, and "New York refers to a Medicaid recipient's monthly income minus the applicable deductions as the individual's 'net available monthly income' or 'NAMI.'" *Sai Kwan Wong v. Doar*, 571 F.3d 247, 251–52 (2d Cir. 2009) (quoting *New York Ass'n of Homes & Servs. for the Aging, Inc. v. Novello*, 786 N.Y.S. 2d

---

[1] At this stage, the Court's review is limited to the facts alleged or incorporated by reference in the amended complaint, and matters of which the Court may take judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Diamond v. Local 807 Labor-Mgmt. Pension Fund*, No. 12-CV-5559 (RRM) (VVP), 2014 WL 527898, at *1 n.1 (E.D.N.Y. Feb. 7, 2014). The Court takes those facts to be true, and draws all reasonable inferences in plaintiffs' favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court is not, however, "bound to accept as true a[ny] legal conclusion couched as a factual allegation." *Sharkey v. Quarantillo*, 541 F.3d 75, 82–83 (2d Cir. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[2] The Department of Health delegates authority to other agencies in local social services districts, charging those agencies with the responsibility to furnish Medicaid benefits to all eligible residents in their respective districts. *See generally* N.Y. Soc. Serv. L. §§ 365–66 (McKinney's 2014). The HRA is the agency responsible for administering Medicaid in New York City. *See id.* §§ 56, 61.

827, 829 (N.Y. App. Div. 2004)). The "NAMI represents the amount that a patient is required to contribute toward his or her care." *Florence Nightingale Nursing Home*, 782 F.2d at 28–29.

The NAMI is calculated by the local agency tasked with determining recipients' eligibility in accordance with policies established by the state Department of Health. New York requires that plaintiffs contribute *all* of their income – less necessary expenses, a "personal needs allowance," and other deductions not relevant here – toward their care. N.Y. Comp. Codes R. & Regs., tit. 18, § 360-4.9; *see also Sai Kwan Wong*, 571 F.3d at 251. At the same time, a state court that appoints a guardian "shall establish, and may from time to time modify, a plan for the reasonable compensation of the guardian" that "take[s] into account the specific authority of the guardian . . . to provide for the personal needs and/or property management for the incapacitated person, and the services provided to the incapacitated person by such guardian." N.Y. Mental Hyg. Law § 81.28(a).

According to plaintiffs, the Department of Health does not permit the deduction of guardianship-related fees and expenses, except in certain limited circumstances. (Am. Compl. ¶¶ 34, 52–53.) Moreover, in *In re Deanna W.*, 908 N.Y.S. 2d 692 (N.Y. App. Div. 2010), the New York Supreme Court, Appellate Division, Second Department, found that "New York's regulations regarding the calculation of an individual's NAMI . . . includes no provision for disregarding an individual's expenses," even "non-discretionary expenses related to the condition contributing to the individual's need for Medicaid assistance." *Id.* at 693–94. Thus, the Appellate Division held that the lower court had erred in "directing the [administering agency] to disregard expenses associated with [the plaintiff]'s guardianship in calculating her NAMI."[3] *Id.*

---

[3] It does not appear that the New York Court of Appeals has weighed in on this issue.

Plaintiffs allege that the "practical import" for individuals who do not have sufficient funds to pay both their NAMI and their guardian raises two possible scenarios. (Compl. ¶ 55.) First, failing to deduct guardianship-related expenses may prevent or undermine the appointment of a qualified guardian, as the ward may be unable to pay the reasonable compensation to which that guardian is entitled. Alternatively, a Medicaid recipient may incur liability for nursing home or hospital charges if the recipient uses funds allocated to the NAMI to pay guardianship-related expenses instead of remitting the entire NAMI as required. Plaintiffs maintain that this "zero-sum game" contravenes the Medicaid Act.[4] (*Id.* ¶ 7.) The Court disagrees for the reasons that follow.

## DISCUSSION

**I.     Standing**

As an initial matter, the Court must determine whether plaintiffs have standing to bring this suit, and concludes they do not. *See Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). "Article III standing is a fundamental constitutional requirement that prevents courts from unnecessarily reaching legal issues in situations where the party to the litigation has failed to allege an injury which triggers an actual case or controversy that needs resolution by the courts." *Butler v. Obama*, 814 F. Supp. 2d 230, 235 (E.D.N.Y. 2011); s*ee also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Whether plaintiffs have standing is determined on the basis of the facts existing at the time the action was filed, *see United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980), and the Court "accept[s] as true all

---

[4] Plaintiffs initially suggested that because a failure to deduct guardianship-related expenses affected their ability to pay their NAMIs, it also threatened their eligibility to receive Medicaid benefits. Plaintiffs have since conceded that this is not that case, and that there is no danger plaintiffs will lose their Medicaid benefits. (*See* Mem. in Opp'n (Doc. No. 19) at 6–7 n.19.)

4

material allegations of the complaint" with respect to standing, "constru[ing] the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). To have standing, plaintiffs must show that (1) they have suffered an "injury in fact" that is both "concrete and particularized" and "actual and imminent, not conjectural or hypothetical"; (2) their injury is "fairly traceable" to defendant's actions; and (3) their injury would likely be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citing *Lujan*, 504 U.S. at 560); *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 211 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2022 (2013).

The Court notes that the amended complaint does not allege several key facts that are arguably relevant in determining whether these particular plaintiffs suffered an injury in fact. For example, plaintiffs do not allege what, if anything, plaintiffs are required to pay their guardians, and whether plaintiffs' guardians have, in fact, paid themselves and not the NAMI; whether the HRA actually considered and declined to exclude plaintiffs' guardianship-related expenses from their NAMI calculation, and whether plaintiffs challenged their NAMI determination through any state administrative or judicial processes.[5] Indeed, at oral argument on the motion held on March 27, 2014, plaintiffs' counsel conceded that he did not know whether there was a fee fixed for any of the, or whether the guardians had even been appointed prior to the calculation of their NAMIs.[6] As such, it is unclear – both from the amended

---

[5] At oral argument, defendant advised the Court that plaintiff Backer mounted an unsuccessful administrative challenge to her NAMI calculation. *See Matter of Freedman v. Comm'r*, 2014 N.Y. Misc. LEXIS 992 (S.Ct. Richmond Cty., March 6, 2014).

[6] In their amended complaint, plaintiffs allege that they have insufficient funds to pay both the NAMI and fees and expenses associated with their guardianship, that their guardians are "entitled, pursuant to a court order, to a fee" and that the NAMI has not been paid. *See, e.g.,* Compl. ¶¶ 58-64. At oral argument, plaintiffs' counsel indicated that he did not know if a guardianship fee had actually been fixed, and believed nothing had actually been paid to the guardians, but rather, certain monies that were to be paid as part of the NAMI were set aside and being held by the guardians.

complaint and from oral argument – that the HRA policy challenged in this action has actually been applied to plaintiffs. But even assuming, *arguendo,* that plaintiffs have sufficiently alleged an injury-in-fact, they lack standing nonetheless, as any such injury cannot "reasonably . . . be said to have resulted, in any concretely demonstrable way," from defendant's alleged violation of the Medicaid Act.[7] *Warth*, 422 U.S. at 504.

Plaintiffs allege that defendant's decision not to exclude guardianship-related expenses from their NAMI calculation injures them because the funds used to pay those expenses must then be drawn from assets allocated to the NAMI, rendering plaintiffs unable to contribute the full amount required toward their care and causing them to incur potential liability for nursing home charges. Defendants urge that by choosing to pay their guardians and forgo their required contribution under Medicaid, plaintiffs are the sole cause of their own injury.[8] Defendants are correct. "The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)). While "the 'fairly traceable' element . . . imposes a standard lower than proximate cause," plaintiffs must still sufficiently allege that "in fact, the asserted injury was the consequence of the defendant['s] actions." *Rothstein*, 708 F.3d at 91–92 (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 (1976)). And although a party "does not lack

---

[7] As to the third element of standing, defendant concedes that plaintiffs' injury would likely be redressed by a favorable decision. (Def.'s Mem. in Supp. (Doc. No. 18) at 9 n.3.)

[8] Defendant agreed at oral argument that it is unclear from the amended complaint whether plaintiffs have indeed paid their guardians and not the NAMI. Nevertheless, defendant argued that this ambiguity does not prevent resolution of this case because, if plaintiffs *have* paid their NAMIs, then they have not incurred liability for any nursing home charges. Conversely, if plaintiffs have *not* paid their NAMIs, defendant argues that any liability incurred for such charges is not "fairly traceable" to any actions by defendant. In either case, defendant urges that plaintiffs lack standing. Because the Court agrees that plaintiffs' claimed injury is not "fairly traceable" to defendant's conduct or the provisions of the Medicaid Act, the deficiency in the amended complaint does not impede the Court's analysis.

standing merely because [his or] her injury is an indirect product of the defendant's conduct," there is no standing if the party cannot "proffer facts establishing that all links in the causal chain are satisfied." *Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir. 1993) (citing *Allen v. Wright*, 468 U.S. 737, 757–58 (1984)).

It bears repeating here that plaintiffs are in no danger of losing any benefits afforded them under the Medicaid Act. Plaintiffs nonetheless complain that not deducting guardian expenses causes an "incapacitated person" under state law to incur debts to their medical providers when he or she uses funds designated as part of the NAMI to instead pay his or her guardian. Assuming the truth of that assertion, any injury is born not of state action but of plaintiffs' own conduct, exercised through their guardians and for which they are responsible. While "[s]tanding is not defeated merely because [a] plaintiff in some sense contributed to his [or her] own injury," it "has been denied where the injury appears *solely* attributable to the plaintiff." *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 246–47 (S.D.N.Y. 2000) (quoting 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.5, at 457 (2d ed. 1984)) (emphasis in original).

Here, plaintiffs' alleged injury is solely attributable to their own voluntary actions. In *Garelick v. Sullivan* the Second Circuit found that limited-income Medicare beneficiaries whose physician fees had originally been subsidized by higher rates charged to wealthier patients failed to demonstrate a causal nexus between their alleged injury, higher fees, and a federal statute that instituted fee caps effectively equalizing rates for wealthy and limited-income beneficiaries. *See* 987 F.2d at 920. The limited-income beneficiaries argued that their injury was "fairly traceable" to the statute because the fee caps caused physicians to charge all patients the same rate. *Id.* The court in *Garelick* disagreed, explaining that "[a]ny increases in the amounts charged to limited-

7

income patients would be the product of independent choices by physicians from among a range of economic options . . . ." *Id.*

The voluntary decisions in this case are similarly "independent choices." Plaintiffs will continue to receive Medicaid benefits without incurring debts to their medical providers so long as plaintiffs continue to pay their required contributions. Any financial liability to the nursing homes that plaintiffs may incur is a direct result of plaintiffs' decision, exercised through their guardians, to forgo paying the NAMI in favor of reimbursing their guardians. As such, plaintiffs' alleged injury is attributable solely to an independent economic choice and not to the Medicaid Act or the state's implementing regulations.

Plaintiffs argue with this conclusion, claiming that the HRA's policy puts them in an impossible financial position because their guardians have a right to be paid. If plaintiffs pay all of their income as part of the NAMI, then it is possible that sufficient funds will not remain to compensate their guardians. But, as plaintiffs' counsel conceded at oral argument, neither the Medicaid Act nor the state's implementing regulations establish any right to compensation on the part of a guardian. Any right to compensation by the guardians themselves, of course, is not plaintiffs' to assert and plaintiffs' guardians are not parties to this action. And moreover, New York law entitles a guardian only to "reasonable compensation," which is determined by the state court appointing the guardian. N.Y. Mental Hyg. Law § 81.28(a) (McKinney's 2014). In fact, plaintiffs conceded at oral argument that "reasonable compensation" may in some cases be zero, as in the case of a *pro bono* guardian, discussed more fully below. Thus, plaintiffs' alleged obligation to pay their guardians flows purely from a state law provision separate and apart from the Medicaid Act.[9]

---

[9] To the extent that plaintiffs' claims are premised on alleged violations of state law, they are barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Bad Frog Brewery, Inc. v.*

Moreover, to the extent that plaintiffs allege the HRA's policy may prevent or undermine the appointment of a qualified guardian, there appear to be ample avenues of redress under state law. In *In re J.T.*, 42 Misc. 3d 1202(A) (N.Y. Sup. Ct. 2013), for example, the New York Supreme Court, Bronx County, directly addressed the intersection of guardians' fees for an incapacitated person in need of nursing home care and the NAMI calculation. The court observed that, "[a]ccording to HRA policy, incapacitated individuals who only have assignable income, *e.g.*, Social Security benefits, are not entitled to a deduction for ongoing guardianship fees since their income can be assigned directly to the nursing home."[10] *Id.* at 1202(A). That is, guardianship-related expenses are not deductible because the guardian is not required to ensure payment for care. On the other hand, the court noted that the "HRA may exclude such guardianship fees from the calculation of [the] NAMI" where incapacitated individuals receive "non-assignable income, *e.g.*, a pension or an annuity," for which a guardian may be required to "access the [recipient's] income and make it available for NAMI payments for the cost of their care." *Id.*[11] The court further observed that the HRA "may deduct fees associated with establishing the guardianship from the incapacitated person's NAMI if that individual lacks the resources to pay such fees." *Id.*

Alternatively, a state court may also appoint an individual *pro bono* or "a public agency, including a local department of social services," to serve as a guardian. N.Y. Mental Hyg. Law § 81.03(a) (McKinney's 2014). That was precisely the situation in *In re Family & Children's Association*, 841 N.Y.S. 2d 218 (N.Y. Sup. Ct. 2007), decided by the New York Supreme Court,

---

*N.Y. State Liquor Auth.*, 134 F.3d 87, 93 (2d Cir. 1998) (citing *Pennhurst*, 465 U.S. at 106) ("It is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law.").

[10] The state argued that in such circumstances "a guardian is not necessary to ensure that the income of the incapacitated person is available to pay for ongoing care at the nursing home." *In re J.T.*, 42 Misc. 3d at 1202(A).

[11] Plaintiffs concede this. Compl. ¶53.

Nassau County. In that case, the court faced what it termed "one of the most difficult situations that occurs in the guardianship arena," namely

> [A]n incapacitated person who all parties agree and that the evidence clearly establishes is in desperate need of a guardian, who has no family members available, and totally without money or assets . . . [whose] needs are so great, and the family unit so dysfunctional, that even the appointment of an individual as a [g]uardian on a pro bono basis would be insufficient . . . .

*Id.* The court observed, however, that "[t]he legislature, in its wisdom, had the foresight to realize that there are those truly unfortunate members of our society" and thus "ha[d] given [state] courts the authority under the Mental Hygiene Law § 81.19(a)(2) to appoint a public agency to be the guardian." *Id.* Finally, state courts presumably can address situations in which guardianship-related expenses exceed an individual's ability to pay through their "discretion to adopt a compensation plan [for a guardian] [they] deem[] appropriate in a particular case." *In re Lindsay*, 715 N.Y.S. 2d 395, 396 (N.Y. App. Div. 2000).

In sum, plaintiffs have failed to allege any injury "fairly traceable" to defendant's conduct or the provisions of the Medicaid Act. Any financial liabilities plaintiffs may incur as a result of not paying the NAMI are the result of an independent economic choice to pay their guardians instead, an obligation that is neither imposed by, nor attributable to, the Medicaid Act, the state's implementing regulations, or any other provision of federal law. And any hardship entailed by plaintiffs' need to compensate their guardian is not a product of state action that contravenes the Medicaid Act, but rather of plaintiffs' failure to seek redress readily available under the New York Mental Hygiene Law.[12] Accordingly, plaintiffs lack standing and the amended complaint must be dismissed.

---

[12] Indeed, it appears that it is the guardians themselves who are disadvantaged by the HRA's policy of excluding guardianship-related fees from the NAMI calculation. Even if plaintiffs' guardians would benefit from a favorable result in this case, however, they are not parties to this action. "The Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the *complaining party*." *Warth*, 422 U.S. at 499 (emphasis added).

**II.     Merits**

Even assuming, *arguendo*, that plaintiffs have standing to bring this action, the amended complaint still must be dismissed.

### A. Legal Standard

As required by Fed. R. Civ. P. 8(a)(2), plaintiffs' amended complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," which "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 578 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plaintiffs' amended complaint need not contain "'detailed factual allegations,'" but it must offer more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Determining whether the amended complaint satisfies these criteria is "a context-specific task" that draws on both "judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

Plaintiffs allege that the failure to deduct their guardianship-related expenses violates substantive rights guaranteed by sections 1396a(a)(19), 1396d, and 1396a(q) of the Medicaid Act.[13] (*See* Am. Compl. ¶¶ 76–85; Pls.' Mem. in Opp'n (Doc. No. 19) at 5.) However, plaintiffs fail to state a claim for which relief can be granted under each of these provisions.

---

[13] Although not pled in the amended complaint, plaintiffs appear to assert two additional grounds in their opposition brief, citing sections 1396a(a)(50) and 1396d(29) as well. (*Compare* Am. Compl. ¶¶ 76–85 *with* Pl.'s Mem. in Opp'n (Doc. No. 19) at 5.) However, a plaintiff "cannot amend [a] complaint by asserting new facts or theories for

11

### B. Section 1396a(a)(19)

Plaintiffs first allege that defendant's conduct "constitutes a deprivation by New York State of rights and privileges . . . set forth in 42 U.S.C. § 1396a(a)(19), which provides that New York State's Medicaid plan 'must' 'provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients." (Am. Compl. ¶ 79 (emphasis omitted).) Other courts, however, have held that this provision "simply express[es] in vague and general form[] the overall goals of the [Medicaid] program, [which is] a patently insufficient base on which to ground a private enforcement action under [section] 1983." *Graus v. Kaladjian*, 2 F. Supp. 2d 540, 544 (S.D.N.Y. 1998); *accord Harris v. James*, 127 F.3d 993, 1010 (11th Cir. 1997); *Stewart v. Bernstein*, 769 F.2d 1088, 1093 (5th Cir. 1985); *Evelyn V. v. Kings Cnty. Hosp. Ctr.*, 819 F. Supp. 183, 196–97 (E.D.N.Y. 1993). This Court agrees.

Plaintiffs bring this suit pursuant to 42 U.S.C. § 1983, (*see* Am. Compl. ¶ 17), but "[s]ection 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970)); *Perez v. New York City Dep't of Corr.*, No. 10-CV-2697 (RRM) (RML), 2013 WL 3226752, at *2 n.2 (E.D.N.Y. June 25, 2013). It has long been settled that section 1983 provides a remedy for rights conferred by federal statutes. *See Maine v. Thiboutot*, 448 U.S. 1 (1980); *Casillas v. Daines*, 580 F. Supp. 2d 235,

---

the first time in opposition to [a] motion to dismiss." *Diamond*, 2014 WL 527898, at *12 n.16 (quoting *Thomas v. City of New York*, No. 12-CV-5061 (FB) (SMG), 2013 WL 3810217, at *3 (E.D.N.Y. July 23, 2013)). Moreover, section 1396a(a)(50) "merely cross-references" section 1396a(q), "so it is to the latter section [that the Court] must turn in assessing whether Congress intended to give Medicaid recipients enforceable rights." *Rabin v. Wilson-Coker*, 362 F.3d 190, 201 (2d Cir. 2004). And while section 1396d(29) provides for "any other medical care, and any other type of remedial care recognized under State law, specified by the Secretary," 42 U.S.C. § 1396d(a)(29), plaintiffs never state with specificity which rights, if any, they claim under that provision.

239 (S.D.N.Y. 2008). "In order to seek redress through [section] 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphases added); *see also NextG Networks of NY, Inc. v. City of New York*, 513 F.3d 49, 52 (2d Cir. 2008).

To determine whether a federal right exists under a given statutory provision, the Court asks if (1) Congress intended the provision in question to benefit plaintiffs; (2) the right protected by the statute is "so vague and amorphous that its enforcement would strain judicial competence"; and (3) the statute "unambiguously impose[s] a binding obligation on the States." *Blessing*, 520 U.S. at 340–41; *see also Graus* 2 F. Supp. 2d at 542. "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by [section] 1983."[14] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002); *Rabin*, 362 F.3d at 200. "Not every rule creates a right," *Graus*, 2 F. Supp. 2d at 543, and this Court joins those that have found section 1396a(a)(19) to be an insufficient base on which to ground a private enforcement action under section 1983. Requiring safeguards that "may be necessary" to administer care and services "in a manner consistent with simplicity of administration and the best interests of the recipients," 42 U.S.C. § 1396a(a)(19), is precisely the type of vague and amorphous obligation that would "strain judicial competence" to enforce. *Blessing*, 520 U.S. at 340–41; *see also Graus*, 2 F. Supp. 2d at 543–44. Thus, plaintiffs do not have a private right of action under section 1396a(a)(19) and, to the extent that they allege violations of that provision, their claims must be dismissed.

---

[14] The State may rebut this presumption, however, by "demonstrat[ing] that Congress shut the door to private enforcement either expressly, through 'specific evidence from the statute itself,' or 'impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under [section] 1983.'" *Gonzaga*, 536 U.S. at 300 n.4 (quoting *Blessing*, 520 U.S. at 341; *Wright v. Roanoke Redevelopment and Hous. Auth.,* 479 U.S. 418, 423 (1987); *Smith v. Robinson*, 468 U.S. 992, 1004–05 n.9 (1984)) (internal citations omitted). No such rebuttal is at issue here.

## C. Section 1396d

Next, plaintiffs allege that defendant's "conduct . . . constitutes a deprivation by New York State of rights and privileges . . . set forth in 42 U.S.C. § 1396d, which provides that certain classifications of persons . . . are entitled to receive Medicaid benefits if their 'income and resources are insufficient to meet all of [the] cost' of . . . care provided during the residency in a nursing home." (Am. Compl. ¶ 80.) Section 1396d is in fact quite extensive, and plaintiffs failed to specify the provision or provisions on which they rely. Arguably, however, plaintiffs are invoking section 1396d(a)(4), which explicitly references assistance in connection with "nursing facility services." 42 U.S.C. § 1396d(a)(4)(A).

It is unclear whether section 1396d(a)(4) contains a private right of action, but the Court need not decide that question because this claim fails to state a plausible basis for relief. Section 1396d(a) provides a definition of "medical assistance" that lists medical services – including certain "nursing facility services" – that are covered or partially covered under Medicaid.[15] *See id.* § 1396d(a)(4). Plaintiffs suggest that a guardianship-related expense qualifies as a covered service under the Medicaid Act because it is, "for someone in a long-term facility, an expense for 'nursing facility services.'" (Pls.' Mem. in Opp'n at 14.) The Medicaid Act, however, describes nursing facility services as "services and activities to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident in accordance with a written plan of care . . . ." 42 U.S.C. § 1396r(b)(2). While legal guardians may assist with securing nursing facility services, *see, e.g.*, *id.* § 1396r(b)(2)(B), the Act gives no indication that guardians' services are themselves a component of that care. *Id.* § 1396d(a)(4)(A). Indeed, plaintiffs' own allegations indicate that guardianship-related expenses may sometimes be completely unrelated

---

[15] Section 1396d(a) also lists groups of individuals that may be eligible to receive Medicaid-funded medical assistance. *See* 42 U.S.C. § 1396d(a)(i)–(xvii). Eligibility is not at issue here. (*See* Am. Compl. ¶¶ 62, 64, 67.)

14

to receiving medical assistance. (*See* Am. Compl. ¶¶ 45–49.) Plaintiffs provide no authority or reasoning for the proposition that nursing facility services encompass guardianship-related expenses, and rest solely on their conclusory assertion that such expenses are covered. As such, this claim does not state a plausible basis for relief.

   **D. Section 1396a(q)**

Plaintiffs' claim under section 1396a(q) also fails. (See Am. Compl. ¶ 79.) Here, too, the Second Circuit has yet to decide whether a private right of action exists. Again, however, the Court need not decide the issue because plaintiffs' claim fails to state a plausible basis for relief. In essence, plaintiffs argue that the statutory "personal needs allowance," which states are required to deduct under the Medicaid Act, must account for guardianship-related expenses. (*See* Am. Compl. ¶ 43(i).) The relevant part of section 1396a(q) states that

> The State plan must provide that, in the case of an institutionalized individual . . . in determining the amount of the individual's . . . income to be applied monthly to payment for the cost of care in an institution, there shall be deducted from the monthly income (in addition to other allowances otherwise provided under the State plan) a monthly personal needs allowance . . . which is reasonable in amount for clothing and other personal needs of the individual . . . while in an institution, and . . . which is not less (and may be greater) than the minimum monthly personal needs allowance . . . .

42 U.S.C. § 1396a(q)(1)(A). The minimum monthly personal needs allowance under the Medicaid Act is "$30 for an institutionalized individual." *Id.* § 1396a(q)(2). New York law is slightly more generous, providing for "[a] personal needs allowance of $50 . . . [for] an applicant/recipient who is a resident of a residential health care facility . . . ." *See* N.Y. Comp. Codes R. & Regs., tit. 18, § 360-4.9.

New York does not include guardianship-related expenses in the personal needs allowance when it calculates the NAMI. New York is not alone in this determination. *See, e.g.*, *Dep't of Health & Mental Hygiene v. Campbell*, 771 A.2d 1051, 1057 (Md. 2001) (holding that

"guardianship commissions" are part of a beneficiary's "available income" and not part of the "personal needs allowance"); *Rudow v. Comm'r of Div. of Med. Assistance*, 707 N.E.2d 339, 347 (Mass. 1999) (finding that the Medicaid Act "does not contemplate the payment of medically necessary guardianship expenses as part of a Medicaid recipient's personal needs allowance"). That states take this approach is not surprising in light of the statutory text and purpose of this provision.

As always, the "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). The express language of section 1396a(q) does not require – or even mention – deducting guardianship expenses. Rather, section 1396a(q) mandates simply that New York deduct at least thirty dollars for a "personal needs allowance which is reasonable in amount for clothing and other personal needs of the individual" when determining a recipient's NAMI. 42 U.S.C. § 1396a(q)(1)–(2). The minimum deduction under New York law, fifty dollars, *see* N.Y. Comp. Codes R. & Regs., tit. 18, § 360-4.9(a)(1), exceeds the minimum federal deduction, *see* 42 U.S.C. § 1396a(q)(2), and plaintiffs do not allege that defendant deducted an allowance less than the state minimum.

Instead, plaintiffs maintain that the state deduction is insufficient because it excludes guardianship-related expenses, which must be considered part of a "recipient's 'personal needs' amounts" since they are "necessary for the personal needs of the recipient." (Am. Compl. ¶ 43(i).) Plaintiffs appear to suggest that the Medicaid Act not only provides for the deduction of the personal needs allowance, but also guarantees the beneficiary's *receipt* of that allowance – even if other parties later seek to collect from those funds.[16] Neither contention has merit.

---

[16] States are prohibited from requiring plaintiffs to pay for benefits covered by Medicaid using funds from the personal needs allowance. *See, e.g.*, *Potter v. James*, 499 F. Supp. 607, 611 (M.D. Ala. 1980) (holding that states may not "require nursing home recipients to invade the minimum monthly allowance . . . to pay any part of the cost of prescription drugs"). But this is not a case where the state has sought to do so.

16

The plain text of the Medicaid Act requires the deduction of an allowance that "is reasonable in amount *for clothing and other personal needs*," 42 U.S.C. § 1396a(q)(1) (emphasis added), indicating that the allowance was intended to allow the purchase of small personal care items to improve patients' quality of life in nursing facilities. The small minimum of thirty dollars mandated by section 1396a(q)(2) is a clear indication that Congress did not contemplate the payment of significant expenses from the allowance – an observation born out by the legislative history of section 1396a(q), which evinces a congressional desire to "enable [patients] to purchase small comfort items not supplied by the[ir] institution," not to provide funds for more substantial "subsistence needs." H.R. Rep. No. 92-231, at 150. The Second Circuit has similarly described the allowance as "modest," explaining that "[t]he deduction is small . . . because, in Congress's judgment, 'most subsistence needs are met by the institution.'" *Sai Kwan Wong*, 571 F.3d at 261 (quoting H.R. Rep. No. 92-231 (1971), *reprinted in* 1972 U.S.C.C.A.N. 4989).

Neither the text nor the legislative history of section 1396a(q) supports plaintiffs' interpretation, and they cite no cases in which a court expanded the personal needs allowance to account for guardianship-related fees. Moreover, to the extent plaintiffs argue that the Medicaid Act guarantees their receipt of the allowance in addition to its deduction during the NAMI calculation, they again failed to adduce any authority supporting their position. Accordingly, New York's decision not to account for guardianship-related expenses under the personal needs allowance does not violate the Medicaid Act.

## CONCLUSION

For the foregoing reasons, plaintiffs lack standing to bring this action and, in any event, fail to state any claims for which relief can be granted.  Accordingly, defendant's motion to dismiss (Doc. No. 17) is granted in its entirety.

The Clerk of Court is directed to enter judgment accordingly, and close this case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
       March 30, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge